OUACHITA VALLEY REFINING COMPANY *v.* WEBSTER.

Opinion delivered January 14, 1929.

*Powell, Smead & Knox,* for appellant.

*T. O. Abbott,* for appellee.

SMITH, J. E. M. Telle leased a certain pipe line gathering system for the term of one year, which lease he later renewed, and on February 21, 1925, he entered into a contract, which designated him as party of the first part, with the Ouachita Valley Refining Company, which was designated as party of the second part, for the joint use of the pipe line. This contract recites that both parties should have the right to transport crude oil through the pipe line during the life of the lease, and that the cost of operation should be borne by the parties in proportion to the quantity of oil each transported through the line for each monthly period covered by the lease. The contract provided how the accounts should be kept of the oil which each party transported through the pipe line, and "that there shall be no attempt to distinguish the oil belonging to first party and the oil belonging to second party, each party being entitled to receive oil of approximately the same gravity as that which goes into the line from their respective leases. Each party shall be entitled to his proper proportion of the total runs, based on approximately equal daily deliveries as shown by the run tickets signed by the producer from whom said oil is purchased."

The contract further provided that, "the pipe line now being full of crude oil, it is understood and agreed that said crude is the property of the first party, and shall so remain during the existence of this contract."

This agreement for the joint use of the pipe line was renewed to cover periods of the renewals of the original lease to Telle.

The parties operated under this contract until January 1, 1927, after which time the second party, the re-

fining company, hereinafter referred to as the company, ceased to use the pipe line, and testimony was offered on behalf of the party of the first part that the company had abandoned the contract for joint use of the pipe line, and had begun the sole use of a line which it had constructed.

Telle died by his own hand on January 12, 1927, and on the following day the company emptied the pipe line, taking therefrom 424 barrels of oil, this being the quantity of oil required to fill it. The testimony on the part of the company was to the effect that, after it had been charged with this oil, the company had still received 22.86 barrels of oil less than the quantity of oil which it had put into the line. It is insisted that this testimony is undisputed, and that a verdict should have been directed in favor of the company in this suit, which was brought by Telle's executor against the company for the value of the oil in the pipe line at the time of Telle's death.

The testimony as to the quantity of oil which the company had received does not appear to have been undisputed, but, even if it were, we do not think a verdict should have been directed in the company's favor.

The company requested the following instruction: "7. Even though you should find that the defendant company had not run any oil into said line for several weeks, yet if you should find from a preponderance of the evidence that it had failed to take from said line an amount of oil equal to the amount placed by it into said line (and this oil had been delivered to plaintiff's intestate), and you should further find that, although plaintiff's intestate continued to run oil into said line, so that at no time was said line completely empty, then you are told that the defendant at all times had title to an amount of oil in said line equal to the amount which it had placed in said line and had failed to receive, but which had been delivered to plaintiff's intestate, and you are instructed that it had a right to

take said oil by peaceable means at any time, either before or after the death of plaintiff's intestate.''

This instruction was given after the court had added the following modification:  ''Provided you find the defendant company had not previously abandoned the use of the line under the contract.'' The company excepted to this modification; but we think it was proper, and that the instruction as modified declared the law as favorably to the company as it could ask. There was a stipulation covering the quantity and value of the oil drawn off by the company on January 13, and, as the jury found for the plaintiff for the value of the oil, we must assume that the jury found the fact to be, under the instruction set out above, that the company had previously abandoned the use of the line under the contract. If this be true, the title to the oil in the pipe line on January 13 was in Telle, notwithstanding the contract for the joint use of the pipe line; indeed, the provision of the contract quoted above, that ''the pipe line now being full of crude oil, it is understood and agreed that said crude is the property of the first party, and shall so remain during the existence of this contract,'' appears to have contemplated that this should be so. It may be that the company did not receive as much oil out of the pipe line as it put in, but, if so, it should have asked and obtained an accounting for the difference. It had no right to proceed in the summary manner in which it did to have a settlement of this balance.

The case of *Henderson Co.* v. *Webster, ante,* p. 553, is in point. That case, like this, was one brought by Telle's executor, and it was shown there as it is here, that Telle's estate was insolvent. Telle's creditor in that case had sold him a carload of casinghead gasoline, and, upon being advised of Telle's death, the creditor undertook to retake the oil, and in attempting so to do claimed that it was exercising the shipper's right of stoppage *in transitu,* where the insolvency of the consignee was discovered. The jury found that delivery of the shipment had been made to Telle in his lifetime, and

upon this finding we said that the right of stoppage *in transitu* could be not be exercised.

In that case, as in this, Telle's executor sued for the value of the converted property, and it was there contended that the shipper had the right, under § 1198, C. & M. Digest, to offset its claim for the purchase price of the oil against the demand of the plaintiff's executor for its value. But we held that the statute "does not authorize one who has sold goods to a person to go to the place of business of the buyer and retake the property which has been delivered, and then, when sued for the value of the property so retaken, set-off debts due to the seller in an action of this kind."

So here, the company having retaken oil the title to which was in plaintiff's testator, could not, when sued for its value, set-off against this demand a claim, however well founded, that the testator owed it for the same quantity of oil, or upon any other account. The company should have probated its claim against the estate for the value of any deficiency in the quantity of oil which it failed to get, for, as we have already said, it had no right to proceed as it did to collect its demand against Telle's estate.

The judgment is therefore affirmed.